# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2002AP1871-D |

| | |
|---|---|
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Elvis C. Banks, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>　　　　　Complainant,<br>　　　v.<br>Elvis C. Banks,<br>　　　　　Respondent. |

ATTORNEY BANKS REINSTATEMENT PROCEEDINGS
Reported at 329 Wis. 2d 39,787 N.W.2d 809
PDC No:2010 WI 105 - Published

| | |
|---|---|
| OPINION FILED: | June 3, 2020 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |

KELLY, J. dissents, joined by REBECCA GRASSL BRADLEY, J.
NOT PARTICIPATING:

ATTORNEYS:

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

No. 2002AP1871-D

STATE OF WISCONSIN     :     IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Elvis C. Banks, Attorney at Law:**

**Office of Lawyer Regulation,**

     **Complainant,**

  **v.**

**Elvis C. Banks,**

     **Respondent.**

**FILED**

**JUN 3, 2020**

Sheila T. Reiff
Clerk of Supreme Court

---

ATTORNEY reinstatement proceeding. *Reinstatement granted, with conditions.*

¶1 PER CURIAM. We review a report filed by Referee John B. Murphy, recommending that the court reinstate, with conditions, Elvis C. Banks' license to practice law in Wisconsin. After careful review of the matter, we agree that Attorney Banks' license should be reinstated and that conditions should be placed upon his practice of law. We also conclude that Attorney Banks should be required to pay the full costs of this reinstatement proceeding, which are $4,205.80 as of September 18, 2019.

¶2 Attorney Banks was admitted to the practice of law in Wisconsin in September 1997. This court revoked his license to practice law in this state on July 16, 2003. See In re Disciplinary Proceedings Against Banks, 2003 WI 115, 265 Wis. 2d 45, 665 N.W.2d 827. In that disciplinary proceeding, Attorney Banks pled no contest to 42 separate counts of professional misconduct arising out of 20 separate representations. The counts included eight violations involving dishonesty, fraud, deceit, or misrepresentation; 11 violations for failure to follow client trust account rules; ten violations for failing to provide competent representation; eight violations for failing to act with reasonable diligence and promptness in representing a client; and one violation for knowingly disobeying an obligation under the rules of a tribunal. In addition to pleading no contest to the 42 counts mentioned above, Attorney Banks also filed a petition for consensual license revocation, in which he admitted that he could not defend against 17 additional counts of misconduct in another seven client matters. Because we revoked his license on the basis of the 42 counts in the then-pending disciplinary proceeding, we deemed it unnecessary to rule on the additional misconduct disclosed in the petition for consensual license revocation.

¶3 Attorney Banks filed a petition for reinstatement of his license to practice law in May of 2009. This court denied the petition for reinstatement, agreeing with the referee that Attorney Banks had failed to satisfy the requirements for reinstatement. In re Disciplinary Proceedings Against Banks, 2010 WI 105, 329 Wis. 2d 39, 787 N.W.2d 809.

¶4   On June 29, 2018, Attorney Banks filed a second reinstatement petition.  After an investigation, the Office of Lawyer Regulation (OLR) filed a response on March 25, 2019, stating that it opposed Attorney Banks' reinstatement due to various concerns, including his failure to pay $11,430.04 in costs owed in connection with his 2003 disciplinary case and his first attempt at reinstatement, and his failure to pay $900 in restitution to the Wisconsin Lawyers' Fund for Client Protection, which had made a payment in that amount arising from his misconduct.

¶5   The referee then held a public hearing on the reinstatement petition, at which only Attorney Banks testified.

¶6   The parties filed post-hearing memoranda.  As will be explained in more detail below, the OLR stated in its post-hearing memorandum that, based upon consideration of the complete record and in light of a post-hearing commitment by Attorney Banks to pay the OLR $300 per month toward his outstanding costs obligation, the OLR no longer opposed Attorney Banks' reinstatement.

¶7   On September 6, 2019, the referee filed a report recommending that this court conditionally grant Attorney Banks' reinstatement petition.  Among other things, the referee found that, since his revocation, Attorney Banks has "applied himself diligently to getting his life back on track"——efforts that are "impressive" and "give insight into the strength of [his] character."  The referee found that Attorney Banks currently works as a school teacher and a security guard.  The referee found that Attorney Banks has remained current with his continuing legal

3

education requirements.[1] The referee found that, if reinstated, Attorney Banks does not intend to practice law in Wisconsin, but rather plans to use his Wisconsin law license to help him become licensed to practice law in Tennessee or Mississippi. The referee found that Attorney Banks has committed to pay the OLR $300 per month toward his outstanding costs obligations. Ultimately, the referee wrote that he "concur[red] with the OLR recommendation that [Attorney] Banks' license to practice law in Wisconsin should be reinstated." The referee proposed that the court impose the following two conditions on Attorney Banks' reinstatement: (1) that he fully comply with his costs payment agreement with the OLR; and (2) that he annually provide the OLR with a summary of his finances.

¶8 Neither party appeals from the referee's recommendation, so the court considers this matter pursuant to SCR 22.33(3).[2]

¶9 In our review, we accept a referee's findings of fact unless they are clearly erroneous. We review a referee's legal conclusions, including whether the attorney has satisfied the criteria for reinstatement, on a de novo basis. See In re Disciplinary Proceedings Against Jennings, 2011 WI 45, ¶39, 334

---

[1] We note that the Board of Bar Examiners filed a memorandum on April 9, 2020, confirming that Attorney Banks is currently in compliance with the court's continuing legal education and ethics and professional responsibility requirements.

[2] SCR 22.33(3) provides: "If no appeal is timely filed, the supreme court shall review the referee's report, order reinstatement, with or without conditions, deny reinstatement, or order the parties to file briefs in the matter."

Wis. 2d 335, 801 N.W.2d 304; In re Disciplinary Proceedings Against Gral, 2010 WI 14, ¶22, 323 Wis. 2d 280, 779 N.W.2d 168.

¶10 Supreme Court Rule 22.29(4) provides that a petition for reinstatement must show all of the following:

(a) The petitioner desires to have the petitioner's license reinstated.

(b) The petitioner has not practiced law during the period of suspension or revocation.

(c) The petitioner has complied fully with the terms of the order of suspension or revocation and will continue to comply with them until the petitioner's license is reinstated.

(d) The petitioner has maintained competence and learning in the law by attendance at identified educational activities.

(e) The petitioner's conduct since the suspension or revocation has been exemplary and above reproach.

(f) The petitioner has a proper understanding of and attitude toward the standards that are imposed upon members of the bar and will act in conformity with the standards.

(g) The petitioner can safely be recommended to the legal profession, the courts and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence and in general to aid in the administration of justice as a member of the bar and as an officer of the courts.

(h) The petitioner has fully complied with the requirements set forth in SCR 22.26.[3]

---

[3] SCR 22.26 provides:

(1) On or before the effective date of license suspension or revocation, an attorney whose license is suspended or revoked shall do all of the following:

(a) Notify by certified mail all clients being represented in pending matters of the suspension or revocation and of the attorney's consequent inability to act as an attorney following the effective date of the suspension or revocation.

(b) Advise the clients to seek legal advice of their choice elsewhere.

(c) Promptly provide written notification to the court or administrative agency and the attorney for each party in a matter pending before a court or administrative agency of the suspension or revocation and of the attorney's consequent inability to act as an attorney following the effective date of the suspension or revocation. The notice shall identify the successor attorney of the attorney's client or, if there is none at the time notice is given, shall state the client's place of residence.

(d) Within the first 15 days after the effective date of suspension or revocation, make all arrangements for the temporary or permanent closing or winding up of the attorney's practice. The attorney may assist in having others take over clients' work in progress.

(e) Within 25 days after the effective date of suspension or revocation, file with the director an affidavit showing all of the following:

(continued)

(i) Full compliance with the provisions of the suspension or revocation order and with the rules and

(j) The petitioner's proposed use of the license if reinstated.

(k) A full description of all of the petitioner's business activities during the period of suspension or revocation.

¶11 Supreme Court Rule 22.29(4m) requires the petitioner to show that he or she has made restitution to or settled all claims of persons injured or harmed by the petitioner's misconduct, including reimbursement to the Wisconsin Lawyers' Fund for Client

---

procedures regarding the closing of the attorney's practice.

(ii) A list of all jurisdictions, including state, federal and administrative bodies, before which the attorney is admitted to practice.

(iii) A list of clients in all pending matters and a list of all matters pending before any court or administrative agency, together with the case number of each matter.

(f) Maintain records of the various steps taken under this rule in order that, in any subsequent proceeding instituted by or against the attorney, proof of compliance with the rule and with the suspension or revocation order is available.

(2) An attorney whose license to practice law is suspended or revoked or who is suspended from the practice of law may not engage in this state in the practice of law or in any law work activity customarily done by law students, law clerks, or other paralegal personnel, except that the attorney may engage in law related work in this state for a commercial employer itself not engaged in the practice of law.

(3) Proof of compliance with this rule is a condition precedent to reinstatement of the attorney's license to practice law.

Protection for all payments made from that fund, or explained the failure or inability to do so.

¶12 Supreme Court Rule 22.31(1)(c) provides that an attorney seeking reinstatement has the burden of demonstrating all of the above requirements by clear, satisfactory, and convincing evidence. Supreme Court Rule 22.31(1) also provides that an attorney seeking reinstatement must show by clear, satisfactory, and convincing evidence that he or she has the moral character to practice law; that his or her resumption of the practice of law will not be detrimental to the administration of justice or subversive to the public interest; and that he or she has complied with SCR 22.26 and the terms of the underlying disciplinary order. See SCR 22.31(1)(a), (b), and (d).

¶13 Our review of this matter is complicated by the fact that the referee did not make specific findings or conclusions with respect to a number of the criteria required for reinstatement. Instead, the referee primarily focused on what he viewed as the most significant challenge facing Attorney Banks' reinstatement petition: his failure to pay $11,430.04 in costs owed in connection with his 2003 disciplinary case and his first attempt at reinstatement.

¶14 To be sure, Attorney Banks' outstanding costs obligation was an important factor for the referee to consider. Outstanding costs obligations must be addressed in reinstatement proceedings, see SCR 22.29(4)(c) and 22.31(1)(d), and their existence bears on many of the reinstatement criteria. But as our above discussion of SCR 22.29(4), (4m), and 22.31(1) shows, there are many other

8

factors that must be taken into account, and the referee's report suffers for having failed to explicitly and thoroughly do so.

¶15 Although the referee's report is lacking in this respect, we opt not to remand this matter to the referee for additional findings and conclusions, for two reasons. First, further proceedings before the referee would generate additional costs for Attorney Banks——who, the record shows, already has considerable financial obligations——and would serve to delay the disposition of this matter further. Second, in its post-hearing memorandum filed with the referee, the OLR agreed that Attorney Banks has satisfied all requirements for reinstatement, and the referee endorsed this agreement between the parties. Specifically, the OLR wrote:

> To gain reinstatement, [Attorney] Banks must prove by clear, satisfactory, and convincing evidence that: (a) he has the moral character to practice law; (b) his resumption of the practice of law will not be detrimental to the administration of justice or subversive of the public interest; (c) his representations in the reinstatement petition, including the representations required by SCR 22.29(4)(a)-(k), (4m), and (5), are substantiated; and (d) he has complied fully with the terms of the revocation order and with the requirements of SCR 22.26. Based upon the complete record, on balance it appears that [Attorney] Banks made an adequate showing as to (a)-(c) and, in light of his post-reinstatement hearing renewed costs repayment arrangement with OLR, is in substantial compliance with (d), as well. Accordingly, OLR does not oppose reinstatement. (citations and footnote omitted).

As noted, the referee wrote in his report that he "concur[s] with the OLR recommendation that [Attorney] Banks' license to practice law in Wisconsin should be reinstated."

9

¶16 Although it would have been far better practice for the referee to have made specific findings and conclusions regarding each of the reinstatement requirements, informed by the parties' agreement that they have been met, the lack of such explicit findings and conclusions does not require that we remand this matter to the referee. The parties and the referee concur that Attorney Banks has satisfactorily shown that he has met the reinstatement criteria delineated above. Although we are not bound by this consensus, see In re Disciplinary Proceedings Against Ruppelt, 2017 WI 80, ¶¶30, 34, 377 Wis. 2d 441, 898 N.W.2d 473, we agree with its correctness, based on our independent review of the record and the particular circumstances of this case.

¶17 Therefore, we hold that Attorney Banks is entitled to reinstatement of his license to practice law in Wisconsin. In order to ensure that Attorney Banks remains in compliance with the terms of his previous disciplinary and reinstatement proceedings and with the requirements of SCR 22.26, and in order to ensure his past misconduct is not repeated, we deem it appropriate to impose the following conditions on the reinstatement of his license to practice law in Wisconsin:

- Attorney Banks shall continue to comply with his costs payments to the OLR until such time as his costs obligation is fully satisfied.
- Within 30 days of the date of his reinstatement, Attorney Banks shall confer with appropriate representatives of the OLR to discuss and reach a plan for repayment of the $900

10

in restitution owed to the Wisconsin Lawyers' Fund for Client Protection.

- Attorney Banks shall annually file with the OLR a financial statement in a form acceptable to the OLR, along with copies of his state and federal tax returns, until such time as he has satisfied all costs and restitution obligations referenced above.

¶18 Finally, with respect to the costs of this reinstatement proceeding, it is our general practice to assess the full costs of the proceeding against the petitioning attorney. See SCR 22.24(1m). The OLR's statement of costs indicates that the costs of this proceeding, as of September 18, 2019, were $4,205.80. Attorney Banks has not filed an objection to the OLR's statement of costs, and we find no basis to depart from our general policy in this matter. Accordingly, we impose the full costs of the reinstatement proceeding on Attorney Banks. As is standard procedure, Attorney Banks may contact the OLR to request a payment plan that will enable him to pay the full costs of this proceeding in a matter consistent with his financial ability.

¶19 IT IS ORDERED that the license of Elvis C. Banks to practice law in Wisconsin is reinstated, effective the date of this order, subject to compliance with the conditions set forth in this order. Absent such compliance, and absent a showing to this court of his inability to comply with this order, the license of Elvis C. Banks to practice law in Wisconsin shall be suspended until further order of the court.

11

¶20 IT IS FURTHER ORDERED that within 60 days of the date of this order, Elvis C. Banks shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $4,205.80 as of September 18, 2019, or enter into a payment agreement plan with the Office of Lawyer Regulation for the full payment of costs over a period of time.

¶21 DANIEL KELLY, J. *(dissenting).* I respectfully, and reluctantly, dissent. Our rules say that an attorney seeking reinstatement must prove, <u>inter alia</u>, that:

- He "has a proper understanding of and attitude toward the standards that are imposed upon members of the bar and will act in conformity with the standards." (SCR 22.29(4)(f));

- He "can safely be recommended to the legal profession, the courts and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence and in general to aid in the administration of justice as a member of the bar and as an officer of the courts." (SCR 22.29(4)(g));

- He "has the moral character to practice law in Wisconsin." (SCR 22.31(1)(a)); and

- His "resumption of the practice of law will not be detrimental to the administration of justice or subversive of the public interest." (SCR 22.31(1)(b)).

Mr. Banks must establish these criteria with "clear, satisfactory, and convincing evidence" (SCR 22.31(1)) at a reinstatement hearing before a court-appointed referee. SCR 22.30. I dissent because we have no way of knowing whether Mr. Banks meets those prerequisites; I do so reluctantly because I am privy to no information suggesting he does not.

¶22 I am in this uncomfortable place primarily because of the deficiencies of the referee's report. The referee's role in the reinstatement process is crucial. His responsibility is not just to resolve disputed facts; he actually creates the factual record we use in determining whether the petitioner has satisfied the prerequisites for reinstatement. SCR 22.32(1) ("[T]he referee

1

shall file in the supreme court a report setting forth findings and a recommendation on the petition for reinstatement."). We are not the finders of fact——we simply review the referee's findings for clear error. See Disciplinary Proceedings Against Mutschler, 2019 WI 92, ¶9, 388 Wis. 2d 486, 933 N.W.2d 99 ("On review, we accept a referee's findings of fact unless they are clearly erroneous.") We then determine for ourselves whether those facts warrant reinstatement of the petitioner's license to practice law (although we benefit from the referee's analysis and recommendation). Id. ("We review a referee's legal conclusions, including whether the attorney has satisfied the criteria for reinstatement, on a de novo basis."); Disciplinary Proceedings Against Mandelman, 2018 WI 56, ¶24, 381 Wis. 2d 628, 912 N.W.2d 395 reconsideration denied sub nom. Office of Lawyer Regulation v. Mandelman, 2018 WI 100, 384 Wis. 2d 771, 920 N.W.2d 928 ("We benefit from the referee's findings and conclusions . . . ."). This responsibility "require[s] us to undertake a comprehensive assessment of the lawyer . . . ."). Id.

¶23 The report in this case, however, prevents us from performing that comprehensive assessment. The referee made not a single finding relevant to the criteria quoted above, a deficiency readily acknowledged by the court's opinion. Majority op., ¶13 ("[T]he referee did not make specific findings or conclusions with respect to a number of the criteria required for reinstatement."). How, then, are we supposed to know whether Mr. Banks properly understands his responsibilities as an attorney? Or whether we can safely recommend him to our fellow Wisconsinites as a person

2

fit to practice law? What are we to consult in determining whether he has the moral character we expect of those we license? If asked to justify our decision today, on what would we rely for our confidence that his practice will not subvert the public interest?

¶24 The court's solution is to take on the role of the referee and perform an independent assessment of the record. Majority op., ¶16. Nothing in our rules prevents this course of action, and indeed it may be pragmatically preferable to remanding the matter to the referee for additional attention. I would accept that unorthodox procedure if the record didn't mirror the report's lack of facts supporting the criteria I identified above.

¶25 Take, for example, Mr. Banks' obligation to prove he "has a proper understanding of and attitude toward the standards that are imposed upon members of the bar and will act in conformity with the standards." SCR 22.29(4)(f). His petition alleges, in conclusory fashion, that he has satisfied this condition. The Office of Lawyer Regulation ("OLR"), however, was not convinced. Its response says "Banks has not met his burden regarding this requirement given his continued lack of appreciation for what he did wrong and his statements suggesting that he continues to believe that the events leading to his revocation were not within his control." The OLR proceeded to document three specific ways in which Mr. Banks failed this standard. At the ensuing hearing, no one addressed this issue. Mr. Banks' written closing statement obliquely touched on it by expressing his appreciation for the role of the rule of law in reducing racial discrimination, and by asserting he has "always had a proper understanding and attitude

3

toward the standards that are imposed upon members of the bar." Notwithstanding its original position, the OLR's closing statement says that, "[b]ased upon the complete record, on balance it appears that Banks made an adequate showing as to" his compliance with SCR 22.29(4)(f). If he did, indeed, make an adequate showing, it's not reflected anywhere in the record. All we have to go on is the OLR's unsubstantiated assurance.

¶26 The same is true with respect to his duty to prove he:

> can safely be recommended to the legal profession, the courts and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence and in general to aid in the administration of justice as a member of the bar and as an officer of the courts.

SCR 22.29(4)(g). As with the previous criterion, his petition summarily asserts he satisfies this condition. The OLR contests this assertion, just as it did above, and substantiates its concerns with specific examples of his lack of fitness. No one addressed this issue at the hearing either. Nonetheless, the OLR's post hearing submission asserts Mr. Banks' fitness. The OLR does not say what changed between its response to the petition and its closing statement. So when the court concludes that Mr. Banks is fit to practice law, it is relying on nothing more than the OLR's unexplained change of opinion.

¶27 The record is similarly lacking with respect to Mr. Banks' obligation to prove he "has the moral character to practice law in Wisconsin." SCR 22.31(1)(a). After reviewing Mr. Banks' petition and supporting material, the OLR opined that he "faces a high burden to prove that he has the moral character to practice

4

law in Wisconsin . . . ." This suggests that, at least at the beginning of the hearing, Mr. Banks' materials had failed to convince the OLR that he has the requisite character. But after the hearing, at which no one spoke of this issue, the OLR changed its position, saying Mr. Banks "had made an adequate showing" of a moral character sufficient to practice law in Wisconsin. The OLR doesn't say what informed this belief or why it changed its position. Nor does anything in the record shed light on the switch. Nor does it give us the information necessary to independently conclude the OLR's original reticence was unjustified.

¶28 Finally, it seems everyone has simply ignored the requirement that Mr. Banks prove his "resumption of the practice of law will not be detrimental to the administration of justice or subversive of the public interest." SCR 22.31(1)(b). The OLR's questionnaire asks for a statement of facts showing that Mr. Banks satisfied this requirement. His response simply says "see addendum." The addendum comprises nothing but a collection of financial documents. No one addressed this issue in the hearing, and the OLR's closing statement simply asserts he has satisfied the criterion. So once again, an independent review of the record discloses that we have nothing upon which to base our conclusion except the OLR's unsubstantiated assertion.

¶29 I do not doubt the OLR genuinely believes that Mr. Banks has satisfied the prerequisites to reinstatement of his law license. Nor do I have information affirmatively suggesting Mr. Banks should not be reinstated. But we don't reinstate attorneys

5

based on the OLR's beliefs or the absence of negative information in the record.  We require proof——by clear, satisfactory, and convincing evidence——that the petitioner has affirmatively met the conditions for reinstatement.  Instead of proof, however, we have a referee's report that does not address the criteria discussed above, a lack of testimony or other evidence from Mr. Banks to prove their satisfaction, and the OLR's failure to explain why it believes we need not inquire any further into the rationale for his reinstatement.  And that means, with respect to the criteria I identified above, we have no facts at all with which to inform our judgment.  So although we have the authority to act as the fact finder in reinstatement petitions, I haven't found facts in this record to support the reinstatement criteria I discussed. For these reasons, I would remand the petition to the referee for further fact-finding.  Therefore, I respectfully (and reluctantly) dissent.

¶30  I am authorized to state that Justice REBECCA GRASSL BRADLEY joins this dissent.

6